MARK D. PETERSON (State Bar #126174)
KATHLEEN O. PETERSON (State Bar #124791)
CATES PETERSON LLP
4100 Newport Place, Suite 230
Newport Beach, CA 92660
Telephone: (949) 724-1180
Facsimile: (949) 724-1190
Email: markpeterson@catespeterson.com

Attorneys for Plaintiff
ST. PAUL FIRE AND MARINE
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA,

## EASTERN DIVISION

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Connecticut corporation,<br><br>　　　　Plaintiff,<br>　　v.<br><br>MORNINGSIDE COMMUNITY ASSOCIATION, a California mutual benefit corporation; FEDERAL INSURANCE COMPANY, a New Jersey corporation,<br><br>　　　　Defendants. | CASE NO.: 5:21-cv-1780<br><br>COMPLAINT FOR:<br><br>(1) DECLARATORY RELIEF: ***PRIMARY*** D&O INSURER HAS NO DUTY TO PAY THE UNDERLYING RESTITUTION AWARDS WHICH DIRECT THE HOMEOWNERS' ASSOCIATION TO RETURN FEES IT IMPROPERLY COLLECTED AFTER A VOID ELECTION;<br><br>(2) DECLARATORY RELIEF: ***EXCESS*** INSURER HAS NO DUTY TO PAY THE UNDERLYING RESTITUTION AWARDS WHICH DIRECT THE HOMEOWNERS' ASSOCIATION TO RETURN FEES IT IMPROPERLY COLLECTED AFTER A VOID ELECTION |

Plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), alleges as follows:

## GENERAL ALLEGATIONS

### Jurisdiction and Venue

1. This Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) in that it is a civil action between citizens of different states in which the matter in controversy exceeds seventy-five thousand dollars, exclusive of costs and interest. Diversity exists between the plaintiff St. Paul, a Connecticut corporation with its principal place of business and main administrative office in Hartford, Connecticut, and each defendant: Morningside Community Association is a California mutual benefit corporation, with its principal place of business and domicile in the City of Rancho Mirage, County of Riverside, California (the "HOA"), and Federal Insurance Company ("Federal") is a New Jersey corporation, with its domicile and principal place of business in Whitehouse Station, New Jersey.

2. This Court has personal jurisdiction over the defendants because they each have a continuous, systematic, and substantial presence within this judicial district as residents.

3. Venue is proper in this judicial district pursuant to 28. U.S.C. §1391(b) and (c).

### Introductory Statement

4. This action concerns the alleged insurability of awards directing the HOA to repay monies it wrongfully took from its members. The California Supreme Court has held that "[i]t is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired." *Bank of the West v. Superior Court (Industrial Indemnity)*, 2 Cal. 4th 1254, 1266 (1992). "When the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrongdoer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law. Otherwise, the wrongdoer

would retain the proceeds of his illegal acts, merely shifting his loss to an insurer." *Id.* at 1269. This would be a violation of public policy. *Id.* at 1266-1270.

5. In two nearly identical lawsuits brought by a host of residents of the Morningside Community Association in Rancho Mirage, the Riverside Superior Court has ruled that the HOA held a *void* election, imposed an invalid fee on its residents, and ordered the HOA to return the money, estimated at between $1 million and $2 million, plus pay attorney's fees. The HOA has demanded reimbursement of that repayment from its primary liability directors and officers insurer, Federal, as well as its umbrella liability insurer, St. Paul. The restitution ordered by the Court is not, however, insured under the HOA's liability policies and such reimbursement would also be against the public policy of California.

6. The law is clear on this point, but Federal, which has paid more than $1 million defending the underlying actions so far, and apparently has tired of paying to defend, is collaborating with the HOA to "dump and run." In an arrangement which is just taking shape, the HOA and Federal are working toward a "settlement" in which (a) Federal will pay all or close to its $2 million policy limits toward the restitution awards, interest, and related attorneys' fees, (b) the HOA and Federal will then claim that this payment exhausts the Federal policy limit and (c) the HOA (and perhaps Federal) will then demand that St. Paul take over the defense and satisfaction of the balance of the restitution awards.

7. St. Paul objects to this arrangement for a host of reasons, including that the Federal policy does not cover the restitution awards and neither does the St. Paul umbrella policy. St. Paul seeks declarations that: (a) the Federal policy does not cover these restitution awards, (b) Federal cannot properly exhaust the limits of the Federal policy by paying the restitution awards, (c) the HOA cannot demand anything under the St. Paul umbrella policy absent proper exhaustion by Federal, (d) even if it could, the St. Paul umbrella policy does not cover these restitution awards, (e) any payment of these restitution awards by Federal or St. Paul would violate California public

policy.

**The Parties**

8. Plaintiff St. Paul is now, and at all relevant times was, a corporation existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. St. Paul is, and at all relevant times was, an insurance carrier eligible to do business and doing business as an insurer in the State of California.

9. Defendant Federal is, and at all times material to this lawsuit was, a New Jersey corporation, with its principal place of business and main administrative office in Whitehouse Station, New Jersey. At all times material to this lawsuit, Federal was authorized to conduct the business of a liability insurance company in the state of California and was doing so.

10. Morningside Community Association is, and at all times material to this lawsuit was, a California mutual benefit corporation, with its principal place of business and domicile in the City of Rancho Mirage, County of Riverside, State of California.

11. The Morningside Community is located in Rancho Mirage, California, with 363 homes situated on 165 acres of landscaped grounds. The HOA governs the Morningside Community.

**The Federal Insurance Policy**

12. Effective July 1, 2014, to July 1, 2015, Federal insured the HOA with policy no. 8227-6511, which provided primary level Directors and Officers insurance, with a limit of $2,000,000 per claim ("the Federal Policy"). The Federal Policy applied to certain claims which were made and reported to Federal during the policy period, or within sixty days thereafter. St. Paul is informed and believes and, on that basis alleges, that attached here as Exhibit 1 (and incorporated here by this reference) is a true and correct copy of the Federal Policy.

**The St. Paul Umbrella Policy**

13. Also effective July 1, 2014, to July 1, 2015, St. Paul insured the HOA with

3
COMPLAINT FOR DECLARATORY RELIEF

1 Specialty Commercial Umbrella Liability Policy ZUP-15P9975313-NF-31779 (the
2 "St. Paul Umbrella Policy"), which provided, in pertinent part, excess level Directors
3 and Officers insurance, with a limit of $15,000,000, per claim, in excess of the
4 $2,000,000 per claim limits of the Federal Policy. The St. Paul Umbrella Policy
5 applies only to certain claims which were made and reported to St. Paul during the
6 policy period, or within sixty days thereafter. Attached here as Exhibit 2 (and
7 incorporated here by this reference) is a true and correct copy of the St. Paul Umbrella
8 Policy.

**The Asher Action**

10    14. On November 17, 2015, the HOA was sued by twenty members of the
11 HOA in *Hal Asher, et al. v. Morningside Community Association, et al.*, Riverside
12 Superior Court Case No. PSC 1505335 (the "Asher Action"). The plaintiffs filed an
13 amended complaint on July 28, 2016. A true and correct copy of the amended
14 complaint, excluding its exhibits, is attached here as Exhibit 3 (and incorporated here
15 by this reference).

16    15. In the Asher Action, the plaintiffs complained that the HOA board had
17 overreached in assessing each of the 363 households with a $250 per month fee for the
18 benefit of the unrelated golf club, The Club at Morningside (the "Club"). The Asher
19 Action remains pending, though the seventh cause of action has been litigated to
20 summary adjudication against the HOA. The seventh cause of action is titled
21 "Restitution and Other Equitable Relief, and Order Voiding Election results for
22 Violations of the Davis-Stirling Election Laws." In this seventh cause of action, the
23 plaintiffs state:

24    "Plaintiffs request the Court void the election results and order the Association
25    to return to Plaintiffs, and all other similarly affected HOA members, all sums
26    paid to date in connection [with] the Proprietary Fee."
27 (Exhibit 3, para. 161.) The plaintiffs in the Asher Action also sought an award of
28 attorney's fees under the statute which they alleged that the HOA violated. (Exhibit 3,

4
COMPLAINT FOR DECLARATORY RELIEF

para. 162.)

**The Asher Action Restitution Award**

16. On or about September 9, 2019, the court in the Asher Action granted summary adjudication for the plaintiffs and against the HOA on the seventh cause of action for "Restitution and Other Equitable Relief, and Order Voiding Election results for Violations of the Davis-Stirling Election Laws." Attached here as Exhibit 7 (and incorporated here by this reference) is a true and correct copy of that order. The court found that the election was unfair, and the fee imposed unauthorized. The order states, in part:

> "Based on the undisputed facts, there were clear election violations such that the court in its discretion may void the election results."

(Exhibit 7, p. 19 of 25.)

> ***"The court exercises its discretion in this matter and finds that the election was void, orders restitution to Plaintiffs, and grants reasonable attorney's fees and court costs (pursuant to future motion)."***

(Exhibit 7, pp. 19-20 of 25 (emphasis added).)

> "The court was unable to locate any cases that discussed [Civil Code] §5145 as it related to the issue of restitution. However, a clear reading of the section reflects that if the court finds an election violation[,] the court's exercise of discretion goes beyond simply determining whether the election is void or not void. The provision states that the court may 'void any results of the election.' One of the 'results of the election' was the collection of the Proprietary Fees from Plaintiffs. Accordingly, under the plain language of the statute and the court's holding in *Wittenburg* [*v. Beachwalk Homeowners Assn.*, 217 Cal. App. 4th 654 (2013)] pertaining to the court's discretion supports a determination that the court may void the election, but not order restitution. However, for the same reasons set forth above related to voiding the election, the court should find that awarding restitution to Plaintiffs would be 'consistent with substantial

justice' under the facts of this case."

(Exhibit 7, pp. 21-22 of 25.)

### The Wright Action and its Restitution Award

17. The HOA was also sued by Laurel Wright and Marvin Hersh, two other members of the HOA in *Laurel Wright, et al. v. Morningside Community Association, et al.*, Riverside Superior Court Case No. PSC 150600 (the "Wright Action"). The plaintiffs filed an amended complaint on September 22, 2016. A true and correct copy of the operative amended complaint, excluding its exhibits, is attached here as Exhibit 8 (and incorporated here by this reference).

18. Like the seventh cause of action in the Asher Action, the tenth cause of action in the Wright Action has been litigated to summary adjudication against the HOA. The tenth cause of action in the Wright Action, similar to the seventh in the Asher Action, is titled "Restitution and Other Equitable Relief, and Order Voiding Election Results." In this tenth cause of action, the plaintiffs state:

> "Plaintiffs request the Court void the election results and order the Association to return to Plaintiffs, and all other similarly affected HOA members, all sums paid to date in connection [with] the Proprietary Fee."

(Exhibit 8, para. 163.) The plaintiffs in the Wright Action also sought an award of attorney's fees under the statute which they alleged that the HOA violated. (Exhibit 8, para. 164.)

19. On or about January 2, 2020, the court in the Wright Action granted summary adjudication for the plaintiffs and against the HOA on the tenth cause of action for "Restitution and Other Equitable Relief, and Order Voiding Election Results." Attached here as Exhibit 9 (and incorporated here by this reference) is a true and correct copy of that order. The court stated that it was issuing "the same order for the same previously litigated and argued reasons [as it did in the Asher Action] insofar as the issues are the same." (Exhibit 9, p. 3 of 13, first paragraph.) Just as it had in the Asher Action, in the Wright Action, the court found that the election was unfair,

6
COMPLAINT FOR DECLARATORY RELIEF

1 and the fee imposed unauthorized and it ordered restitution of all of the improperly
2 collected fees, plus reasonable attorney's fees and costs.  (Exhibit 9, p. 10 of 13,
3 bottom paragraph.)

### The Restitution Awards Are Not Covered Under the St. Paul Umbrella Policy

6     20.  St. Paul has informed the HOA that it is not entitled to defense or indemnity under the St. Paul Umbrella Policy for the claims presented in the Asher Action or the Wright Action.  Attached here as Exhibit 10 (and incorporated here by this reference) is a detailed statement of St. Paul's position regarding the lack of coverage under the St. Paul Umbrella Policy.

### Federal Repeatedly Acknowledges that the Restitution Awards Are Not Covered by the Federal Policy

13     21.  The court's order for judgment on the seventh cause of action in the Asher Action, titled "Restitution and Other Equitable Relief, and Order Voiding Election results for Violations of the Davis-Stirling Election Laws," is referred to here as the "Asher Award."  The identical finding and order for judgment in the Wright Action is referred to here as the "Wright Award."  Collectively the Asher Award and the Wright Awards are referred to here as the "Restitution Awards."  St. Paul is informed and believes that, inclusive of interest and attorney's fees, satisfying the Restitution Awards will cost the HOA more than $2 million.

21     22.  Federal received a tender of the Asher Action and the Wright Action from the HOA, agreed to defend the HOA but reserved the right to disclaim coverage for the restitution awards sought by the plaintiffs.  Attached here as Exhibits 4, 5, and 6 (and incorporated here by this reference) are true and correct copies of letters by Federal to the HOA.  In those letters, Federal states—correctly—that any restitution award of the proprietary fee collected by the HOA could not be covered under the Federal Policy.  Federal observed that "the return of money improperly collected is not insurable in California.  'It is well established that one may not insure against the

risk of being ordered to return money or property that has been wrongfully acquired.' (*Bank of the West v. Superior Court* (1992) 2 Cal 4th 1254, 1266. [¶] ***Public policy does not permit a wrongdoer to retain the proceeds of its wrongful acts while shifting the cost of those acts to its insurer.*** [Citations omitted.]" (Exhibit 6, p. 4 (emphasis added); Exhibit 5, p. 1 (same).)  See also Exclusion A(4) of the Federal Policy, cited by Federal to the HOA in Exhibit 4, at p. 3: explaining that the Federal Policy states that Federal "shall not be liable for **Loss** on account of any **Claim** directly or indirectly based upon, arising from, or in consequence of . . . any **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled."  (See also, Exhibit 1 (Federal Policy), p. 23.)

**Federal Changes Its Tune**

23.  Federal's defense obligations to the HOA under the Federal Policy do not reduce or otherwise affect its $2 million indemnity policy limit, i.e. Federal may owe unlimited defense costs in addition to its policy limit.  Federal's defense obligation terminates only "after [Federal's] applicable Limit of Liability with respect to such **Claim** has been exhausted by the payment of **Loss.**"

24.  St. Paul is informed and believes and, on that basis alleges, that Federal has spent more than $1 million defending the HOA in the Asher Action and Wright Action and will spend substantial addition sums to defend the HOA in these matters through trial and/or other resolution.

25.  Although Federal has advised the HOA that the Restitution Awards are not Loss and that "[i]f Federal were to reimburse the subject fees under the circumstances here, Federal would be, in effect, helping to pay for the maintenance (and assisting in the financial viability) of the Club, an obligation no one could reasonably contend the [HOA's] insurer owes" (See Exhibit 6, page 4), Federal has decided to pay its limits toward the Restitution Awards, even though they are not covered.

26.  St. Paul is informed and believes and, on that basis alleges, that Federal has concluded that it would be more economical—solely from Federal's perspective—to

8
COMPLAINT FOR DECLARATORY RELIEF

simply pay its policy limits toward uncovered claims, provided doing so would terminate Federal's defense obligations to the HOA with respect to the Asher and Wright Actions.

27. St. Paul is informed and believes and, on that basis alleges, that the HOA is complicit in or supports Federal's "dump and run" strategy, and will assert that Federal's proposed payment of the Restitution Awards will exhaust the limits of the Federal Policy and terminate Federal's defense obligation. This arrangement allows Federal to stop defending, and it offers to net the HOA some $2 million of insurance money from Federal that it is not entitled to.

28. While Federal may contend that its decision to make a voluntary payment for uncovered claims is its own business, that is not so here. First, it is a violation of California public policy. Moreover, St. Paul does not agree that Federal's payment toward the Restitution Awards impairs or exhausts the limits of the Federal Policy or creates any obligation on the part of St. Paul to defend or indemnify the HOA with respect to the Asher or Wright Actions.

29. There are real, substantial and justiciable issues in controversy between and among the parties with respect to the effects of Federal's proposed payment toward the Restitution Awards on the obligations of the HOA and St. Paul under the St. Paul Umbrella Policy.

30. St. Paul seeks the Court's intervention to declare the rights and obligations of the HOA, Federal and St. Paul with respect to the payment of the Restitution Awards and the defense of the Asher and Wright Actions under the Federal Policy and the St. Paul Umbrella Policy.

# FIRST CAUSE OF ACTION FOR
# DECLARATORY RELIEF: NO COVERAGE IS AVAILABLE
# FOR THE RESTITUTION AWARDS UNDER THE
# FEDERAL PRIMARY INSURANCE POLICY
### (By St. Paul Against All Defendants)

31.  St. Paul incorporates the allegations of paragraphs 1 through 30 here as if restated.

32.  The Restitution Awards are not covered under the Federal Policy for a host of reasons, plainly reflected in the Federal Policy, most of which are summarized well by Federal itself in its letters to the HOA, attached here as Exhibits 4, 5, and 6.  The reasons that the Restitution Awards are not covered under the Federal Policy include:

   a.  "[T]he return of money improperly collected is not insurable in California.  'It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired.'" (*Bank of the West v. Superior Court* (1992) 2 Cal. 4th 1254, 1266.)  (Exhibit 6, p. 4; Exhibit 5, pp. 1-2.)

   b.  Payment by Federal of the Restitution Awards would violate California public policy.  *Bank of the West, supra,* at 1266-1270.

   c.  The Restitution Awards do not constitute "Loss" as defined by the Federal Policy (Exhibit 4, p. 3).

   d.  "If Federal were to reimburse the subject fees under the circumstances here, Federal would be, in effect, helping to pay for the maintenance (and assisting in the financial viability) of the Club, an obligation no one reasonably could contend the Association's insurer owes.  'Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.'  (See Cal. Ins. Code, § 22.)  The Federal Policy cannot be converted into an agreement to maintain the Club.  (Citations omitted.)"  (Exhibit 6, p. 4.)

   e. The HOA's spending the proprietary fees which are the subject of the Restitution Awards constitutes a violation of the cooperation clause of the Federal Policy, prejudicing Federal.  (Exhibit 6, p. 5.)

   f. The HOA's continuing to collect and dispose of improper fees after tender to Federal constituted a failure of its duty to mitigate, prejudicing Federal.  (Exhibit 6, p. 5.)

   g. Some or all of the fees which became the subject of the Restitution Awards were not covered because they were not from wrongful acts committed during the Federal Policy period.  (Exhibit 6, p. 5.)

  h. Attorney's fees, costs and interest qualify as a Loss covered by Federal "only to the extent an insured becomes legally obligated to pay them on account of a Claim for which coverage applies."  (Exhibit 6, p. 5.)  Since the Restitution Awards are not covered, attorney's fees and interests added to it are not covered either.

  i. The Federal Policy excludes coverage for loss in consequence of "[A](4) any **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled…"  (Exhibit 1, p. 23; Exhibit 4, p. 3.)  The Restitution Awards are such a loss.

33.  Federal was correct as to each and all of these assertions: the Restitution Awards are not covered under the Federal Policy.

34.  St. Paul is informed and believes and, on that basis alleges Federal has now reversed course and decided to pay uncovered claims because it has concluded doing so would be in its economic interest, assuming such payment would stop its ongoing obligation to pay attorney's fees.  For its part, the HOA seeks payment from Federal toward the Restitution Awards in order to get $2 million to which it is not entitled.

35.  St. Paul is informed and believes and, on that basis alleges the HOA and Federal will contend the proposed Federal payments will properly exhaust the limits of the Federal Policy, and the HOA (and, perhaps, Federal) will contend St. Paul is

then obligated under the St. Paul Umbrella Policy to defend and indemnify the HOA with respect to the Restitution Awards and the Asher and Wright Actions.

36.  An actual, present, and justiciable controversy has arisen and now exists between and among St. Paul and Federal and the HOA concerning their respective rights, duties and obligations owing to the HOA under the Federal Policy.

37.  Declaratory relief is appropriate and necessary and the Court should exercise its jurisdiction over this matter and grant declaratory relief to St. Paul because St. Paul has no other plain, speedy, and/or adequate remedy at law.

## SECOND CAUSE OF ACTION FOR
## DECLARATORY RELIEF: NO COVERAGE IS AVAILABLE
## FOR THE RESTITUTION AWARDS UNDER THE
## ST. PAUL UMBRELLA POLICY
### (By St. Paul Against All Defendants)

38.  St. Paul incorporates the allegations of paragraphs 1 through 30 and 32 through 37 here as if restated.

39.  The Restitution Awards are not covered under the St. Paul Umbrella Policy for a host of reasons, plainly reflected in the St. Paul Umbrella Policy (Exhibit 2), most of which are summarized well by St. Paul in its letter to the attorney for the HOA, attached here as Exhibit 10.

40.  The St. Paul Umbrella Policy states:

**Directors And Officers Following Form Endorsement (SUM 376 (03/11)):**

With respect to the coverage provided by this policy that applies in excess of the Scheduled Underlying Insurance listed directly below, which provides coverage on a claims-made basis, this policy also provides coverage on a claims-made basis:

**Scheduled Underlying Insurance Description:** DIRECTORS & OFFICERS LIABILITY

[AS PER APPLICABLE EVIDENCE OF INSURANCE ON FILE WITH THE COMPANY]

\*\*\*

B. The following is added to section **I. Coverage A.**, but only for this endorsement:

We will also pay on behalf of the **Insured** all sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages because of **Directors and Officers Liability Loss** because of a **Claim** or **Suit** that is first made or brought on or after the retroactive date, if the applicable **Scheduled Underlying Insurance** contains a **retroactive date provision**, and

   1. during the **Policy Period**; or

   2. within any **Extended Reporting Period** provided under this policy;

but only if:

   1. insurance for such **Directors and Officers Liability Loss** is provided by any **Scheduled Underlying Insurance** or any **Scheduled Retained Limit** and then for no broader coverage than the insurance provided by that **Scheduled Underlying Insurance;** and

   2. the **Wrongful Act** takes place anywhere in the world….

If we are prevented by law or statute from paying such sums on behalf of any Insured, then we will, where permitted by law or statute, indemnify that Insured for such sums in excess of the **Retained Limit.** In any event, the amount we will pay for damages is limited as described in section III. **Limits Of Insurance**.

There is no coverage under this policy for **Directors and Officers Liability Loss** unless a **Retained Limit** applies.

(Exhibit 2, p. 69 of 76; Exhibit 10, pp. 9-10.)

41. St. Paul contends that the Restitution Awards are not covered under the St. Paul Umbrella Policy for the following reasons (among others):

   a. The Restitution Awards are not covered by the Federal Policy, which is a threshold requirement for coverage under the St. Paul Umbrella Policy (Exhibit 2, p. 70 of 76, section E);

   b. The St. Paul Umbrella Policy pays only in excess of the payment of covered claims under the Federal Policy (see quoted language above); since the impending payment of the Restitution Awards by Federal is not payment of claims covered by the Federal Policy, there can be no coverage under the St. Paul Umbrella Policy; (Exhibit 10, p. 9, bottom—p. 10, and p. 17.)

    c. The St. Paul Umbrella Policy states that St. Paul will pay "sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay <u>***as damages***</u> because of **Directors and Officers Liability Loss.**" (Underlined bold italics added.) The Restitution Awards are for restitution, repayment of funds wrongfully collected, ***not for "damages."*** "It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies." *Bank of the West v. Superior Court* (1992) 2 Cal. 4th 1254, 1266.

    d. Payment by St. Paul of the Restitution Awards would violate California public policy. *Bank of the West, supra,* at 1266-1270.

    e. The St. Paul Umbrella Policy, by following the Federal Policy, requires as a pre-requisite to coverage, that St. Paul receive notice of a claim during the policy period or sixty days thereafter (see St. Paul Umbrella Policy, Exhibit 2, p. 70 of 76, section E; see Federal Policy, Exhibit 1, at section VII(A), p. 26); St. Paul's policy was effective July 1, 2014, to July 1, ***2015***, and St. Paul did not receive notice of the Asher Action or the Wright Action until on or about December 19, ***2019***, more than four years later than required for the HOA to be entitled to coverage. (Exhibit 10, p. 6, and 16-17.) The pre-requisite to coverage is not met.

42. St. Paul is informed and believes and, on that basis alleges that the HOA (and, perhaps, Federal) contend to the contrary.

43. An actual, present, and justiciable controversy has arisen and now exists between and among St. Paul, the HOA and, perhaps, Federal, concerning the respective rights, duties and obligations owing to the HOA under the St. Paul Umbrella Policy.

44. Declaratory relief is appropriate and necessary and the Court should exercise its jurisdiction over this matter and grant declaratory relief to St. Paul because

St. Paul has no other plain, speedy, and/or adequate remedy at law.

**PRAYER**

Wherefore, St. Paul prays for an order and declaratory judgment against all defendants as follows:

**Under the First Cause Of Action**

1. For declarations that:

   a. the HOA is not covered under the Federal Policy for the Restitution Awards and Federal has no contractual obligation to pay them;

   b. any payment toward the Restitution Awards by Federal would violate California public policy;

   c. any payment of the Restitution Awards by Federal is a voluntary payment and cannot properly impair or exhaust the policy limits of the Federal Policy;

**Under the Second Cause Of Action**

2. For declarations that:

   a. the HOA is not covered under the St. Paul Umbrella Policy for the Restitution Awards; St. Paul is not obligated to pay any of them;

   b. any payment toward the Restitution Awards by St. Paul would violate California public policy;

**All Causes of Action**

3. For costs of suit;

4. For all other relief which the Court finds just and proper.

Dated: October 21, 2021

                                      Respectfully submitted,

                                      _/s/ Mark D. Peterson_
                                      MARK D. PETERSON
                                      Of CATES PETERSON LLP
                                      Attorneys for Plaintiff
                                      ST. PAUL FIRE AND MARINE
                                      INSURANCE COMPANY